# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BROOKE COUNTY COMMISSION,**
**HANCOCK COUNTY COMMISSION**,
**HARRISON COUNTY COMMISSION**,
**LEWIS COUNTY COMMISSION**,
**MARSHALL COUNTY COMMISSION**,
**OHIO COUNTY COMMISSION**,
**TYLER COUNTY COMMISSION**, and
**WETZEL COUNTY COMMISSION**,

        Plaintiffs,

    v.

**PURDUE PHARMA L.P.**; **PURDUE PHARMA, INC.**; **THE PURDUE FREDERICK COMPANY, INC.**; **MARK RADCLIFFE**; **MARK CROSS**; **PATTY CARNES**; **TEVA PHARMACEUTICALS USA, INC.**; **CEPHALON, INC.**; **JANSSEN PHARMACEUTICALS, INC.**; **ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.** n/k/a Janssen Pharmaceuticals, Inc.; **JANSSEN PHARMACEUTICA, INC.**; n/k/a Janssen Pharmaceuticals, Inc.; **JOHNSON & JOHNSON**; **ENDO HEALTH SOLUTIONS, INC.**; **ENDO PHARMACEUTICALS, INC.**; **ALLERGAN plc**; **ACTAVIS plc**; **ACTAVIS, INC.**; **ACTAVIS LLC**; **ACTAVIS PHARMA, INC.**; **WATSON PHARMACEUTICALS, INC.**; **WATSON PHARMA, INC.**; **WATSON LABORATORIES, INC.**; **McKESSON CORPORATION**; **CARDINAL HEALTH, INC.**; **AMERISOURCEBERGEN DRUG CORPORATION**; **RITE AID OF MARYLAND INC.**; **KROGER LIMITED PARTNERSHIP II**; **CVS INDIANA L.L.C.**; **WAL-MART STORES EAST, LP**; **GOODWIN DRUG COMPANY**; **WEST VIRGINIA BOARD OF PHARMACY**; **DAVID POTTERS**; **EDITA P. MILAN, M.D.**; **TRESSIE MONTENE DUFFY, M.D.**; **SCOTT JAMES FEATHERS, D.P.M.**; and **AMY LYNN BEAVER, P.A.-C**,

        Defendants.

**Civil Action No. 5:18-CV-09**
**Civil Action No. 5:18-CV-10**
**Civil Action No. 5:18-CV-11**
**Civil Action No. 5:18-CV-12**
**Civil Action No. 5:18-CV-13**
**Civil Action No. 5:18-CV-14**
**Civil Action No. 5:18-CV-15**
**Civil Action No. 5:18-CV-16**

**ORDER GRANTING PLAINTIFFS' EMERGENCY MOTIONS TO REMAND**

Pending before this Court is Plaintiffs' Emergency Motion to Remand **[Civil Action No. 5:18-CV-9 Doc. 5; Civil Action No. 5:18-CV-10 Doc. 7; Civil Action No. 5:18-CV-11 Doc. 7; Civil Action No. 5:18-CV-12 Doc. 6; Civil Action No. 5:18-CV-13 Doc. 6; Civil Action No. 5:18-CV-14 Doc. 7; Civil Action No. 5:18-CV-15 Doc. 6; Civil Action No. 5:18-CV-16 Doc. 6]**. In the Motions, the plaintiffs seek to have these case remanded to the Circuit Court of Marshall County, West Virginia, on the basis that this Court as well as the Multi-District Litigation Court lack jurisdiction over this case.

This civil action was filed in the Circuit Court of Marshall County, West Virginia, on December 13, 2017 [Doc. 1-1]. On January 18, 2018, defendants McKesson Corporation, Cardinal Health, Inc., and AmerisourceBergen Drug Corporation removed this case to this Court [Doc. 1]. In their Motion, the removing defendants sorted the various defendants into a number of groups as follows:

| | |
|---|---|
| "Manufacturing Defendants" | Purdue Pharma L.P.; Purdue Pharma, Inc; The Purdue Frederick Company, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc., n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc., n/k/a Janssen Pharmaceuticals, Inc.; Johnson & Johnson; Endo Health Solutions Inc.; Endo Pharmaceuticals, Inc.; Allergan plc; Actavis plc; Actavis, Inc; Actavis, LLC; Actavis Pharma, Inc.; |

2

|  |  |
|---|---|
|  | Watson Pharmaceuticals, Inc.; Watson Pharma, Inc; and Watson Laboratories, Inc. |
| "Distributor Defendants" | McKesson Corporation; Cardinal Health, Inc.; and AmerisourceBergen Drug Corporation, Rite Aid of Maryland, Inc.; Kroger Limited Partnership II; CVS Indiana, L.L.C.; and Wal-Mart Stores East, LP. |
| "Board Defendants" | The West Virginia Board of Pharmacy ("Board") and David Potters, its former Executive Director. |
| "Medical Defendants" | Edita P. Milan, M.D., Tressie Montene Duffy, M.D., Eugenio Aldea Menez, M.D., Scott James Feathers, D.P.M., and Amy Lynn Beaver, P.A.-C. |
| "Purdue Sales Reps" | Mark Radcliffe; Mark Ross; and Patty Carnes. |
| "Goodwin" | Goodwin Drug Company. |

According to the removing defendants, "the Judicial Panel on Multidistrict Litigation created a Multidistrict Litigation ('MDL') in the Northern District of Ohio that would include this case and the many others like it, i.e., cases in which 'cities, counties and states . . . allege that . . . distributors failed to monitor . . . and report suspicious orders of prescription opiates.' **In re Nat'l Prescription Opiate Litig.**, MDL No. 2804, Doc. 328 (Dec. 5, 2017 Transfer Order) . . .. Several virtually identical cases have already been transferred to the MDL."[1]

---

[1] The Transfer Order actually states that "cities, counties and states that allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed (directly and through key opinion leaders) these drugs to physicians, and/or (2) distributors failed to

3

In the Notice of Removal, the removing defendants contend that the consent of the the Board Defendants, Medical Defendants, Manufacturing Defendants, Purdue Sales Representatives, and Goodwin was not required because they are fraudulently joined or misjoined [Doc. 1].[2] The removing defendants base their arguments of fraudulent joinder and/or misjoinder on the following:

The claims against the Medical Defendants are fraudulently misjoined because none of those defendants are alleged to have any connections to Distributor Defendants beyond the theory that all contributed in some way to the "opioid epidemic."

The claims against the BOP and its former Executive Director are fraudulently joined because the BOP cannot be held liable for damages for the performance of its regulatory duties.

The claims against an eighth distributor, Goodwin Drug, are fraudulently joined because plaintiffs allege no specific wrongdoing by Goodwin, it has not been licensed to distribute controlled substances in more than two years, and it had a negligible market share even when it did distribute opioids.

The claims against the Sales Rep Defendants are fraudulently misjoined because

---

monitor, detect, investigate, refuse and report suspicious orders of prescription opiates. All actions involve common factual questions about, inter alia, the manufacturing and distributor defendants' knowledge of and conduct regarding the alleged diversion of these prescription opiates, as well as the manufacturers' alleged improper marketing of such drugs. Both manufacturers and distributors are under an obligation under the Controlled Substances Act and similar state laws to prevent diversion of opiates and other controlled substances into illicit channels. Plaintiffs assert that defendants have failed to adhere to those standards, which caused the diversion of opiates into their communities."

[2] Notwithstanding the above, the Manufacturing Defendants have provided consent to the removal. The Board Defendants, Medical Defendants, Purdue Sales Representatives, and Goodwin did not consent to removal.

none of those defendants are alleged to have any connections to Distributor Defendants beyond the theory that all contributed in some way to the "opioid epidemic," and are also fraudulently joined because they are nominal parties who are alleged to have acted only in their capacity as agents of manufacturer Purdue.

Applicable Law

When an action is removed from state court, a federal district court is required to first determine whether it has original jurisdiction over the plaintiff's claims. In this case, that issue depends on whether there is complete diversity of citizenship between the parties.[3] **West Virginia University Bd. of Governors ex rel. West Virginia University v. Rodriguez**, 543 F.Supp.2d 526, 535 (N.D. W.Va. 2008).

"The burden of demonstrating jurisdiction resides with 'the party seeking removal.'" **Maryland Stadium Authority v. Ellerbe Becket Inc.**, 407 F.3d 255, 260 (4th Cir. 2005), citing **Mulcahey v. Columbia Organic Chems. Co.**, 29 F.3d 148, 151 (4th Cir. 1994). Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. **Shamrock Oil & Gas Corp. v. Sheets**, 313 U.S. 100 (1941).

If federal jurisdiction is doubtful, a remand to state court is required. **Maryland Stadium**, 407 F.3d at 260. On the other hand, if this Court has jurisdiction, it is required to exercise it. **Gum v. General Electric Co.**, 5 F.Supp.2d 412, 415 (S.D. W.Va. 1998) (Haden, CJ)("It is well-established federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'").

---

[3] There is no dispute that the amount in controversy requirement is met.

In his well-written opinion in *County Comm. of McDowell Co. v. McKesson Corp.*, 263 F.Supp.3d 639 (S.D. W.Va. 2017), Judge Faber stated as follows:

> Normally, the existence of diversity jurisdiction, or the lack thereof, is to be determined from the face of the well-pleaded complaint. *See* ***Wyatt v. Charleston Area Med. Ctr.***, 651 F.Supp.2d 492, 496 (S.D. W.Va. 2009). Two distinct doctrines, however, permit the court to disregard the citizenship of improperly joined parties. *See* ***In re Lipitor***, 2016 WL 7339811 at *1; ***Wyatt***, 651 F.Supp.2d at 496. Judge Goodwin succinctly describes these doctrines in ***Wyatt*** at page 496 as follows:
>
>> Fraudulent joinder and fraudulent misjoinder are two distinct legal doctrines that provide exceptions to the well-pled complaint rule as it applies to removal based on diversity jurisdiction by allowing courts to disregard the citizenship of certain parties. Fraudulent joinder is applicable where a defendant seeking removal argues that other defendants were joined when there is no possible cause of action against those defendants or where the complaint pled fraudulent facts. *See* ***Ashworth*** [*v. Albers Med., Inc.*], 395 F.Supp.2d [395] at 403 [S.D. W.Va. 2005]. Fraudulent misjoinder, on the other hand, is an assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order

to defeat diversity jurisdiction and removal. See *id.* at 409–10. **Wyatt**, 651 F.Supp.2d at 496.

B. Fraudulent Joinder

The doctrine of fraudulent joinder is an exception to the well-pleaded complaint rule. It requires the court to disregard the citizenship of a party who is deemed to have been fraudulently joined. In order to establish fraudulent joinder in a particular case, a removing defendant must show either (1) there is no possibility that the plaintiff can establish a cause of action against the removing defendant, or (2) that there has been outright fraud in plaintiff's pleading of jurisdictional facts. See **Marshall v. Manville Sales Corp.**, 6 F.3d 229, 232 (4th Cir. 1993); **Ashworth v. Albers Med., Inc.**, 395 F.Supp.2d 395, 402–03 (S.D. W.Va. 2005).

Very few fraudulent joinder cases involve actual fraud. Most turn upon the "no possibility of recovery" standard. Courts have applied this rule in the extreme. If the plaintiff demonstrates a mere "glimmer of hope" that its claim will succeed, the jurisdictional inquiry must end and the case be remanded. **Hartley v. CSX Transp., Inc.**, 187 F.3d 422, 424–26 (4th Cir. 1999).

. . .

C. Fraudulent Misjoinder

Fraudulent joinder assumes that the claim against the nondiverse defendant is sufficiently related to the claims against the diverse defendant to have been properly joined in the same lawsuit. Such is not the case with

7

the related, but distinct, doctrine of fraudulent misjoinder. Here, the inquiry is whether claims against the diverse and non-diverse defendants are sufficiently related to be properly joined in a single case.

Caselaw developing the fraudulent misjoinder doctrine stems from **Tapscott v. MS Dealer Serv. Corp.**, 77 F.3d 1353 (11th Cir. 1996). There, in a class action for violations of Alabama law arising from the sale of service contracts on automobiles, the court held that misjoinder of a diverse defendant was so egregious as to amount to fraudulent joinder. While the court did not expressly adopt fraudulent misjoinder as a separate legal doctrine, it rejected the argument, advanced by the plaintiff, that a misjoinder, no matter how egregious, can never amount to fraudulent joinder. 77 F.3d at 1360.

Later, in **In re Prempro Prods. Liab. Litig.**, 591 F.3d 613, 620 (8th Cir. 2010), a United States Court of Appeals drew a distinction between fraudulent joinder and fraudulent misjoinder and adopted fraudulent misjoinder as a "somewhat different and novel exception to the complete diversity rule...." The court observed that two other circuits, the Fifth and the Ninth, had acknowledged the rule without expressly adopting it. See *id.* fn.4 (citing **In re Benjamin Moore & Co.**, 318 F.3d 626, 630–31 (5th Cir. 2002) and **California Dump Truck Owners Ass'n v. Cummins Engine Co., Inc.**, 24 Fed.Appx. 727, 729 (9th Cir. 2001)).

The Fourth Circuit Court of Appeals has apparently neither accepted

8

nor rejected the doctrine, but a number of district courts in our circuit have considered it. While these courts have split on the issue, the weight of authority accepts the doctrine. The cases are discussed in *In re Lipitor*, *supra*. This court concludes that it should follow the majority of these cases and apply the doctrine here.

Courts have held that propriety of joinder of the claims is to be determined by state law. In West Virginia the rule of civil procedure governing joinder is virtually identical to the corresponding federal rule—the rules even bear the same number, Rule 20. As a consequence, cases decided under Federal Rule of Civil Procedure 20 are helpful in deciding whether the claims at issue may be properly joined together in a single suit. See **State ex rel. Energy Corporation of America v. Marks**, 235 W.Va. 465, 774 S.E.2d 546, 550–51 (W.Va. 2015).

Under Federal Rule 20 and the corresponding West Virginia rule, the claims, to be properly joined, must (1) arise out of the same transaction or occurrence, and (2) present a question of law or fact common to all defendants. See **Ashworth**, 395 F.Supp.2d at 411; **Marks**, 774 S.E.2d at 550.

. . .

The *In re Lipitor* case, *supra*, a fraudulent misjoinder case, applied the same heightened standard that applies to a case of fraudulent joinder. See **In re Lipitor**, 2016 WL 7339811, at *6. There, the court held that to

9

establish fraudulent misjoinder, the removing party was required to show either outright fraud, or that there was no possibility that the plaintiff would be able to join the diverse and non-diverse claims.  *See id.*  This court respectfully views this approach as outside the mainstream of Fourth Circuit jurisprudence and declines to follow it.  As Judge Goodwin observed in *Wyatt*, 651 F.Supp.2d at 496:

> The prevailing standard is whether there is a "reasonable possibility that a state court would find that [the plaintiffs'] claims against [one set of defendants] were properly joined with [the] claims against the other defendants[.]"

The *Wyatt* case was a medical malpractice action against health care providers and doctors for alleged negligence in installing a medical device. The plaintiffs joined the manufacturers of the device alleging negligence and strict liability in its manufacture.  The court concluded that the claims arose out of the same occurrence—the plaintiff's surgery "and the after effects of that surgery."  651 F.Supp.2d at 498.

This case, in contrast to *Wyatt*, is more akin to **Hughes v. Sears, Roebuck and Co.**, 2009 WL 2877424 (N.D. W.Va. Sept. 3, 2009). **Hughes** involved an injury on a treadmill. *See id.* at *1.  The plaintiff sued Icon, the manufacturer of the treadmill, and Sears, from whom she bought the treadmill. *See id.*  Plaintiff claimed the treadmill malfunctioned, causing her to lose her footing and be thrown off.  *See id.*  Later, the same day, an

emergency room physician, joined as a co-defendant, allegedly misdiagnosed her injuries. See *id.* Judge Bailey in **Hughes** distinguished *Wyatt* as follows:

> The essence of the claims against Sears and Icon arise from the design, testing, manufacture and sale of a consumer product from which Ms. Hughes fell and eventually sought treatment from Dr. Logar who, then, allegedly provided a misdiagnosis. Unlike the doctor in Wyatt ..., Dr. Logar had no control over the allegedly defective product. Thus, here, there is no such bridge to provide a persuasive argument that the medical malpractice and products liability claims arise out of the same transaction or occurrence. Moreover, ... the evidence supporting these claims will be markedly different.

2009 WL 2877424 at *6.

**Cty. Comm'n of McDowell Cty. v. McKesson Corp.**, 263 F.Supp.3d 639, 646 (S.D. W. Va. 2017).

Discussion

This Court will first address the issue of whether the Sales Rep Defendants are fraudulently joined or misjoined. The removing defendants' argument that the fact that an agent may be acting on behalf of a principal somehow renders the Sales Rep Defendants nominal parties who are insulated against personal liability is simply wrong under West Virginia law.

11

In ***Dent v. Chesapeake Appalachia, LLC***, 2013 WL 461255, *5 (N.D. W.Va. Feb. 5, 2013), Judge Stamp held that "'agency law does not insulate an agent from liability for his or her torts because an agent's tort liability is not based upon the contractual relationship between principal and agent, but upon the common-law obligation that every person must so act or use that which he or she controls as not to injure another.' 3 ***Am.Jur.2d***, Agency § 298. Further, '[a]n agent is not relieved from liability merely because he or she acted at the request, command, or directions of the principal.' ***Id***. 'Thus, an agent may be held liable for his or her own ... trespass.' ***Id***."

Similarly, Syllabus Point 5 of ***Travis v. Alcon Laboratories***, 202 W.Va. 369, 504 S.E.2d 419 (1998), holds that "'[a]n agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship. Of course, if he is acting within the scope of his employment, then his principal or employer may also be held liable.' Syllabus Point 3, ***Musgrove v. Hickory Inn, Inc.***, 168 W.Va. 65, 281 S.E.2d 499 (1981)."

Also, in Syllabus Point 3 of ***Jarvis v. Modern Woodmen of America***, 185 W.Va. 305, 406 S.E.2d 736 (1991), the West Virginia Supreme Court of Appeals held that "'"[a]n agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship. Of course, if he is acting within the scope of his employment, then his principal or employer may also be held liable." Syllabus Point 3, ***Musgrove v. Hickory Inn, Inc.***, 168 W.Va. 65, 281 S.E.2d 499 (1981).' Syllabus Point 2, ***Harless v. First Nat'l. Bank in Fairmont***, 169 W.Va. 673, 289 S.E.2d 692 (1982)."

Plaintiffs' Complaint also raises numerous individual allegations against the Purdue Sales Reps concerning their specific conduct and asserts individual claims against these defendants in their individual capacity, thus rending them potentially personally liable to plaintiffs [Doc. 1-1, ¶¶ 725-744]. For example, plaintiffs allege that defendant Radcliffe - Purdue's former West Virginia District Manager- trained his sales representatives to be "Audible Ready" when questioned about street-abuse and to misrepresent OxyContin's addictiveness and likelihood of abuse, diversion, and misuse [Doc. 1-1, ¶ 739]. As noted above, the Purdue Sales Reps are not immune from their tortious conduct simply because they were acting within the scope of their employment or agency.

Defendant's assertion that **Dent**, *supra*, did not involve allegations of tortious conduct committed within the scope of the individual defendant's agency is incorrect. In **Dent**, Judge Stamp specifically held:

> Like in the plaintiffs' complaint here, the individual defendant in [**Jarvis**, *supra*,] was alleged to have engaged in the conduct in the course of his employment …, but because the conduct alleged was his own, rather than simply general behavior of the defendants in the course of denying benefits, the Court allowed the case to continue against that defendant. The Court stated, "[a]n agent or employee can be held personally liable for his own torts ... and this personal liability is independent of his agency or employee relationship. If he is acting within the scope of employment, then his principal or employer may also be held liable." For the same reasons, this Court finds that a possible individual claim has been alleged against defendant Dobkin,

and he is not protected from liability by respondeat superior. Accordingly, defendant Dobkin has not been fraudulently joined to this civil action.

*Id*., 2013 WL 461255, at *6 (internal citations omitted).

The Purdue Sales Reps are also properly joined under Rule 20's liberal joinder requirements. Defendants' argument that plaintiffs' claims involve different legal duties misses the point. Absolute identity of issues and events is not required under Rule 20 and joinder is permissible for all reasonably related claims. **Saval v. BL Ltd.**, 710 F.2d 1027, 1031 (4th Cir. 1983). Regarding the first prong of Rule 20, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. **J.C. ex rel. Cook v. Pfizer, Inc.**, 2012 WL 4442518, at *5 (S.D. W.Va. Sept. 25, 2012).

The instant claims are logically related and arise out of the same series of transactions or occurrences. As the JPML found, claims against distributor and manufacturer defendants were proper for consolidation because they involved the "improper marketing and widespread diversion of prescription opiates into states, counties and cities across the nation …." **In re Nat'l Prescription Opiate Litig.**, No. MDL 2804, 2017 WL 6031547, at *2 (U.S. Jud. Pan. Mult. Lit. Dec. 5, 2017).[4] The improper marketing and resulting widespread diversion, abuse and addiction of opioids are a logically related series of transactions involving both sets of defendants as the conduct of each defendant,

---

[4] While the Purdue Sales Reps are not individually named as defendants in any of the claims currently pending in the MDL, because these defendants were sales representatives and district managers for Purdue, their conduct overlaps and is related to the conduct of Purdue - a manufacturer defendant in the MDL.

14

at various stages in the marketing, sale and distribution of the opioid drugs, caused the ultimate diversion, abuse, addiction and damages in plaintiffs' counties. Further, these defendants each had the ability and responsibility to stop the diversion of the drugs at various points along the road of sale and distribution. Plaintiffs' claims against these defendants also involve the same occurrence-the opioid epidemic and plaintiffs' resulting damages. While the duty owed by each defendant may differ, these differences are not dispositive because proper joinder under Rule 20 only requires a logical relationship between the claims, which is present here.

Common questions of fact and law also abound in plaintiffs' claims as has been previously determined by the JPML. *See* **In re Nat'l Prescription Opiate Litig.**, 2017 WL 6031547, at *2 ("[W]e find that the actions in this litigation involve common questions of fact …"). Like the cases in the MDL, this case involves common legal, factual, and evidentiary issues, including: defendants' knowledge of and conduct regarding the diversion, abuse and addiction of prescription opioids; the amount of opioid drugs marketed, sold and distributed in the counties; the relationship between the legitimate needs of the counties and the quantities of opioids marketed, sold and distributed in the counties; the relationship between the dramatic increase in the number of opioids distributed in the counties and diversion, abuse and addiction; the role that security measures play in the prevention of diversion, abuse and addiction; and the damages incurred by each of the counties. Additionally, Distributor Defendants are authorized distributors for Purdue and are an essential part of Purdue's distribution chain. Thus, records and communications between Distributor Defendants and Purdue, including the Sales Reps, are relevant and material evidence, particularly to the extent they concern the massive increase in the amount of

15

opioids marketed and flowing into the counties; what efforts were taken to prevent diversion of controlled substances; and knowledge of diversion, abuse and addiction within the counties.

In the ***McDowell County*** case, Southern District of West Virginia, Civil Action No. 1:17-CV-946, the defendant Cardinal Health filed a Notice of Fault [Doc. 69]. This Notice is highly relevant to whether these claims are properly joined. Because a distributor defendant has blamed the Manufacturer Defendants - and by extension their sales representatives - resolution of this case will require answering inextricably linked questions of fact arising out of a singular series of transactions, i.e. the marketing, sale, promotion, distribution and/or diversion of opioids within the plaintiffs' counties. Thus, defendants' Notice of Fault supports the conclusion that these claims arise out of the same series of transactions or occurrences and should be litigated in a single action.

In ***Wyatt v. Charleston Area Medical Center***, 651 F.Supp.2d 492 (S.D. W.Va. 2009), Judge Goodwin considered a claim of fraudulent misjoinder in an action where local health care providers who had surgically installed a medical device which allegedly malfunctioned, causing injury. The plaintiffs joined the manufacturer of the device under the theories of negligence and strict liability. Judge Goodwin found that there were common issues of fact and that the claims arose from the same transaction or occurrence.

This Court finds that the same rationale applies in this case. There are common issues of fact and the claims against the Manufacturing Defendants, the Distributor Defendants and the Sales Rep Defendants are intertwined and arise out of the same series of transactions or occurrences. With respect to these defendants, there is no fraudulent

joinder or misjoinder. Accordingly, there is not complete diversity among the properly joined parties, and this Court lacks jurisdiction to consider any further issues in this case.[5]

In light of the above, the Plaintiffs' Emergency Motions to Remand **[Civil Action No. 5:18-CV-9 Doc. 5; Civil Action No. 5:18-CV-10 Doc. 7; Civil Action No. 5:18-CV-11 Doc. 7; Civil Action No. 5:18-CV-12 Doc. 6; Civil Action No. 5:18-CV-13 Doc. 6; Civil Action No. 5:18-CV-14 Doc. 7; Civil Action No. 5:18-CV-15 Doc. 6; Civil Action No. 5:18-CV-16 Doc. 6]** are **GRANTED**. These cases are hereby **REMANDED** to the Circuit Court of Marshall County, West Virginia.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein and to the Clerk of the Circuit Court of Marshall County, West Virginia.

**DATED:** February 23, 2018.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

---

[5] In light of this ruling, there is no need to address the issue of whether the Board Defendants, Medical Defendant or Goodwin are fraudulently joined or misjoined. That issue may be determined by a Court with jurisdiction.